1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                         CENTRAL DISTRICT OF CALIFORNIA

10   RITA G. SOOHOO,                    )   Case No. ED CV 08-1761-PJW
                                        )
11              Plaintiff,              )
                                        )   MEMORANDUM OPINION AND ORDER
12      v.                              )
                                        )
13   MICHAEL J. ASTRUE,                 )
     Commissioner of the               )
14   Social Security Administration,    )
                                        )
15              Defendant.              )
     _____   )

16

17                             I. INTRODUCTION

18       Before the Court is Plaintiff's appeal of a decision by Defendant

19   Social Security Administration ("the Agency"), denying her

20   applications for Disability Insurance benefits ("DIB") and

21   Supplemental Security Income ("SSI").  Plaintiff claims that the

22   Administrative Law Judge ("ALJ") erred when he: 1) found that she was

23   not credible; 2) rejected testimony from her son and daughter-in-law;

24   3) failed to accept a treating doctor's opinion that she was disabled;

25   and 4) relied on the vocational expert's testimony, which was flawed.

26   (Joint Stip. at 3-9, 14-16, 18-19, 22-24.)  Because the Agency's

27   decision is not supported by substantial evidence, it is reversed and

28   the case is remanded.

1

II. SUMMARY OF PROCEEDINGS

2      Plaintiff applied for DIB and SSI on June 16, 2005, alleging that

3 she had been unable to work since February 13, 2004, because of

4 fibromyalgia, arthritis, and depression.  (Administrative Record

5 ("AR") 88-89, 127, 137.)  The Agency denied the application initially

6 and on reconsideration.  (AR 119-31.)  Plaintiff then requested and

7 was granted a hearing before an ALJ.  (AR 111-15.)  Plaintiff appeared

8 with counsel and testified at a hearing on August 22, 2007.  (AR 41-

9 87.)  On October 10, 2007, the ALJ issued a decision denying benefits.

10 (AR 22-33.)  Plaintiff appealed to the Appeals Council, which denied

11 review.  (AR 16-20.)  Plaintiff then commenced the instant action.

12                          III. DISCUSSION

13      1.   The Credibility Determination

14      In her first claim of error, Plaintiff contends that the ALJ

15 erred in discounting her testimony that she suffered from pain

16 throughout her body, had poor concentration, was unable to sit or

17 stand for lengthy periods, was forced to spend three to four days per

18 week in bed, and experienced side effects from her medication.  (Joint

19 Stip. at 3.)  Plaintiff argues that, though the ALJ provided numerous

20 reasons to support his credibility finding, none of them is legally

21 sufficient.  (Joint Stip. at 3-9.)  For the following reasons, the

22 Court agrees that the ALJ's credibility analysis was flawed and

23 remands for further proceedings.

24      ALJs are tasked with judging the credibility of witnesses.  In

25 making these credibility determinations, ALJs employee ordinary

26 credibility evaluation techniques.  *Smolen v. Chater*, 80 F.3d 1273,

27 1284 (9th Cir. 1996).  Where a claimant has produced objective medical

28 evidence of an impairment which could reasonably be expected to

2

produce the symptoms alleged and there is no evidence of malingering, the ALJ can only reject the claimant's testimony for specific, clear, and convincing reasons. *Id.* at 1283-84. These reasons must be supported by substantial evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

The ALJ found that Plaintiff had severe impairments consisting of hypothyroidism, chronic fatigue syndrome, degenerative disc disease, degenerative joint disease of the lumbar spine, fibromyalgia, depression, hypertension, and arthritis of the third and fourth fingers of the left hand. (AR 27.) The ALJ concluded that Plaintiff's impairments could reasonably be expected to produce her alleged symptoms (and did not find that she was malingering), but determined that her statements concerning those symptoms were "not entirely credible." (AR 30.) He gave six reasons to support this finding, which are addressed in order below. Though it might appear that the ALJ provided more than enough reasons to discount Plaintiff's allegations of disabling pain, closer examination reveals that some of the reasons are not legally valid and others are not supported by the facts. As such, remand is required.

The ALJ's first justification for finding that Plaintiff was not credible was that she sat "comfortably" throughout the hearing. (AR 30.) In general, this is not a proper basis for discounting a claimant's credibility. *See Perminter v. Heckler*, 765 F.2d 870, 872 (9th Cir. 1985) (disapproving of so-called "sit and squirm" jurisprudence). This is particularly true here, where Plaintiff complained of discomfort during the hearing, testifying that she could feel her neck stiffening because she had been waiting and had not been able to rest her neck or lay down, and then testifying that she had to

3

1  stand up during the hearing because her back was hurting.  (AR 50,
2  56.)  Thus, this reason for discounting her testimony is rejected.

3      A second reason offered by the ALJ was that the record "indicates
4  that [Plaintiff] has failed to follow prescribed treatment and has not
5  done her exercises."  (AR 30.)  Though a claimant's failure to follow
6  prescribed treatment is a proper basis for an ALJ to conclude that a
7  claimant's symptoms are not as painful as alleged, *see Tommasetti v.*
8  *Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quotation omitted), here
9  the ALJ did not specify which prescribed treatment Plaintiff failed to
10 follow.  The Court has been unable to determine on its own what
11 treatment the ALJ was referring to and, apparently, the Agency lawyer
12 has had no better luck, as counsel failed to set forth what he
13 believes the ALJ was referring to.  (Joint Stip. at 9-12.)  Thus, this
14 reason is rejected.

15     Similarly, the ALJ did not offer any basis for his finding that
16 Plaintiff had not done her exercises.  The record shows that her
17 rheumatologist, Dr. Zamiri, noted in an initial evaluation that
18 Plaintiff should participate in regular exercise and lose weight in
19 order to manage her fibromyalgia.  (AR 279.)  Dr. Zamiri did not state
20 how often she needed to exercise, however.  Dr. Zamiri also stated in
21 a treatment plan that Plaintiff should "exercise regularly."  (AR 270-
22 71.)  At the hearing, Plaintiff testified that she does stretching
23 exercises--even though it hurts when she does them--"two, three times
24 a week."  (AR 55-56.)  In the absence of evidence establishing that
25 Plaintiff was told by her doctor to exercise more frequently and she
26 refused, there was no basis for the ALJ's conclusion that Plaintiff
27 had not done her exercises.

28

4

A third reason offered by the ALJ for rejecting Plaintiff's testimony was that Plaintiff left her last job because she was fired, not because she was disabled, and, thereafter, failed to look for work. (AR 30.) Though this may constitute a proper reason for discounting a claimant's testimony, *see Thomas*, 278 F.3d at 959 (holding ALJ's finding claimant had "extremely poor work history . . . negatively affected her credibility"), Plaintiff correctly points out, and the Agency concedes, that the record establishes that Plaintiff looked for work after she was fired from her job. (AR 47, 208; Joint Stip. at 11.) Thus, though it may have been reasonable for the ALJ to infer that, because Plaintiff stopped working because she was terminated, not because she was in too much pain to work, she was capable of working, the ALJ's error regarding her attempts to find work casts doubt on his conclusion that Plaintiff was not motivated to work. As a result, this does not constitute a clear and convincing reason to reject Plaintiff's testimony.[1]

The fourth reason provided by the ALJ for questioning Plaintiff's testimony was that her daily activities and her treatment history were inconsistent with her claims of disability. (AR 30.) The record does not support this finding.

Daily activities can be grounds for an adverse credibility finding, but only if a claimant is able to "spend a substantial part

---

[1]   Additionally, the record shows that Plaintiff attended a ten-day "vocational evaluation" conducted by the state department of rehabilitation in April 2005, after which the evaluator concluded that Plaintiff had not "demonstrated the ability to benefit from either competitive or supported employment services." (AR 179.) A May 17, 2005 note stated that Plaintiff "is too disable[d] to receive[] services from Department of Rehabilitation." (AR 200.) The ALJ failed to comment on either report.

of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (quotation omitted). The fact that a claimant can perform some household chores in a limited way does not mean that she can work. *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (holding a claimant need not be "utterly incapacitated" in order to be found disabled).

Plaintiff testified that she washed dishes--"if there's dishes in the sink I put them in the dishwasher"--and she cooked--"I do cook, but just anything--just to throw in the skillet and put it together real quick." (AR 57, 58.) The ALJ found that Plaintiff's ability to "cook and wash dishes" undermined her testimony that she was disabled. (AR 30.) The Court disagrees. The minimal amount of effort Plaintiff described here does not suggest that she has the ability to hold down a job or that she was lying when she testified, in essence, that she was too incapacitated to work. Thus, this does not constitute a convincing reason to reject her pain testimony.

As to Plaintiff's "conservative" treatment, the record does not support this as a reason to reject her testimony, either. (AR 30.) Though this is a legitimate reason for discounting a claimant's testimony, *see Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("The ALJ is permitted to consider lack of treatment in his credibility determination."), the ALJ failed to explain how Plaintiff's treatment was limited or conservative, or to cite to where in the record a doctor had suggested that more aggressive treatment was called for and Plaintiff ignored that advice. Thus, this reason cannot serve as a justification for discounting Plaintiff's testimony.

The fifth reason cited by the ALJ was that Plaintiff appeared to exaggerate her pain symptoms at the hearing, apparently meaning that Plaintiff moved her arms or neck while testifying in a way that contradicted her testimony that she could not move them in that way. (AR 30.)  This was a proper basis for the ALJ to discount Plaintiff's testimony about her limitations, *see Verduzco*, 188 F.3d at 1090, and nothing in the record contradicts the ALJ's finding.

The sixth reason relied on by the ALJ was that there were inconsistencies in the medical findings, and between those findings and Plaintiff's testimony regarding her limitations.  He noted that examining orthopedist Dr. Sabourin found minimal limitations in the range of motion in Plaintiff's neck, contradicting Plaintiff's testimony that she could not move it very far.  Additionally, the ALJ noted that, despite Plaintiff's allegation of pain in her back, shoulders, hips, knees, wrists, and elbows, Dr. Sabourin found no tenderness in her joints, as would be expected with fibromyalgia.  The ALJ also noted that, though Dr. Zamiri, Plaintiff's rheumatologist, found numerous tender points in her body, he also found normal range of motion in her neck and shoulder, no muscle atrophy, and no sensory or motor deficits.  Finally, the ALJ noted that Dr. Sabourin and the state agency reviewing physicians found that Plaintiff had the ability to do medium-level work.  (AR 30.)

In general, an ALJ is entitled to rely on the fact that a claimant's complaints are not supported by objective medical evidence to conclude that she is exaggerating her claims of pain.  *See*, *e.g.*, *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001) (upholding ALJ's credibility determination in part because evaluations revealed little evidence of disabling abnormality of the claimant's spine).

Here, the medical record shows that the treating and examining doctors were divided, not only with respect to the extent of Plaintiff's limitations and allegations of pain, but also on the question of whether she had fibromyalgia. (*Compare* AR 205-07 (stating that Plaintiff "does not have the true tender areas one would [expect] with the diagnosis of fibromyalgia), *with* 279 (diagnosing fibromyalgia/chronic fatigue syndrome)). Nevertheless, the ALJ found that Plaintiff suffered from fibromyalgia and expressly credited the opinion of rheumatologist Zamiri. (AR 27, 31.) Having accepted the opinion of rheumatologist Zamiri--rheumatology being the relevant speciality for fibromyalgia--the ALJ was obligated to give more weight to Dr. Zamiri's opinion than to the opinions of the non-specialist doctors who examined Plaintiff. *See Benecke v. Barnhart*, 379 F.3d 587, 594 n.4 (9th Cir. 2004). The ALJ was also bound to take into account the "unique evidentiary difficulties associated with the diagnosis and treatment of fibromyalgia," and, in particular, the fact that objective evidence would be relatively less helpful in determining Plaintiff's limitations. *Rogers v. Comm'r, Soc. Sec. Admin.*, 486 F.3d 234, 245 (6th Cir. 2007); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003) (reversing where the "ALJ effectively required 'objective' evidence for a disease [i.e., fibromyalgia] that eludes such measurement."); *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996) (noting that fibromyalgia symptoms are "entirely subjective"). Where, as here, the ALJ concluded that Plaintiff suffered from fibromyalgia, and, clearly, fibromyalgia can cause pain, the ALJ could not rely on the fact that some doctors believed that Plaintiff did not have fibromyalgia, and others were

8

unsure about her symptoms, to conclude that Plaintiff was not telling the truth.[2]

In the end, of the six reasons relied on by the ALJ for finding that Plaintiff was not credible, only one valid justification remains, i.e., that it appeared to the ALJ that Plaintiff was exaggerating her symptoms at the administrative hearing.  This is the least persuasive.  Further, it is not clear to the Court whether the ALJ would have found Plaintiff not credible for that reason alone.  *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (stating that the "relevant inquiry . . . is whether the ALJ's decision remains legally valid," despite errors in the credibility analysis).  For this reason, the issue is remanded for further consideration.

2.   <u>The Lay Witness Testimony</u>

In her second claim of error, Plaintiff contends that the ALJ erred by failing to properly discuss the written "testimony" of her son and daughter-in-law.  (Joint Stip. at 15-16.)  For the following reasons, the Court concludes that the ALJ erred as to the son, but not the daughter-in-law.

---

[2]  It is unclear to what extent the ALJ accepted the "objective medical evidence" in this case.  For example, the ALJ did not explain how he determined that Plaintiff could lift or carry ten pounds occasionally and less than ten pounds frequently.  (AR 28.)  No doctor made such a finding.  Though the ALJ stated that he credited the testimony of the medical expert, Dr. Landau, and examining orthopedist Sabourin, those doctors found, respectively, that Plaintiff could lift and carry ten pounds frequently and 20 pounds occasionally, and 50 pounds occasionally and 25 pounds frequently.  (AR 31, 66, 207.)  It is particularly important in a case such as this, where the medical evidence points in different directions, for the ALJ to explain his conclusions regarding the claimant's limitations.  On remand, he should do so.

9

In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work.  *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006); *Smolen*, 80 F.3d at 1288; 20 C.F.R. §§ 404.1513(d)(4),(e). Testimony from someone in a position to observe a claimant's symptoms and daily activities is competent evidence that must be considered. *See Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993).  However, an ALJ need only give reasons that are "germane" to the testimony in order to reject it.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).

Plaintiff's son reported that Plaintiff was no longer able to sit for long periods of time, clean the house, or cook dinner because of her chronic pain.  (AR 165.)  The ALJ failed to mention the son's testimony.  This was error.  *See Stout*, 454 F.3d 1053.  Further, the error was not harmless because, crediting this testimony, it is not clear to the Court that no reasonable ALJ would have concluded that Plaintiff was disabled.  *See Stout*, 454 F.3d at 1056 ("[W]e hold that where the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.").

The Agency's argument that the son's testimony should be discounted because he thought that his mother suffered from Lupus is rejected.  The ALJ never said that he was rejecting the testimony for that reason.  On remand, the ALJ should address this testimony.

Plaintiff's daughter-in-law reported that Plaintiff often had difficulty sleeping, could no longer prepare meals, could not do

10

1  housework, rarely went outside, could no longer "actively garden,"
2  could walk no further than one or two blocks, and found all physical
3  activities "taxing" because of her pain.  (AR 147-51.)  She also
4  reported that Plaintiff was "unable to sit or stand for long periods
5  and has to rest after any length of standing because of the pain it
6  causes."  (AR 163.)  According to the daughter-in-law, "on the very
7  rare occasions we do go shopping or spend a few hours out of the house
8  [Plaintiff] requires repeated breaks to rest and is in constant pain."
9  (AR 163.)

10       The ALJ noted the daughter-in-law's testimony but stated that he
11  gave "greater weight" to the documented medical evidence of record.
12  (AR 29.)  This reason is germane to the testimony and is, arguably,
13  supported by the record.  As such the ALJ's rejection of the daughter-
14  in-law's testimony will not be disturbed.  *See Bayliss*, 427 F.3d at
15  1218 (affirming ALJ's rejection of lay witness testimony because it
16  was inconsistent with medical evidence).

17       3.  <u>The Treating Doctor's Opinion</u>

18       In her third claim of error, Plaintiff contends that the ALJ
19  erred when he rejected an assessment of disability by Plaintiff's
20  treating physician Antonio Tan without providing a reason.  (Joint
21  Stip. at 18-19.)  For the following reasons, the Court disagrees.

22       Though, in general, a treating doctor's opinion is entitled to
23  deference, *see*, *e.g.*, *Orn*, 495 F.3d at 631, a treating doctor's
24  opinion regarding the ultimate issue of disability is not entitled to
25  any special weight.  *See Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190,
26  1195 (9th Cir. 2004) (reaffirming that treating physician's opinion is
27  "not binding on an ALJ with respect to the . . . ultimate
28  determination of disability.");  20 C.F.R. § 404.1527(e)(3); *see also*

Social Security Ruling 96-5p (stating that opinion that claimant is disabled, "even when offered by a treating source, can never be entitled to controlling weight or given special significance").

In a May 24, 2007 letter, Dr. Tan opined that Plaintiff suffers from multiple medical problems and "has not been able to work since 2004." (AR 285.)  Dr. Tan reported that, "[b]ased on her medical conditions [Plaintiff] has not been able to recover completely and further adjustments of her medications will be assessed upon recommendation of the Rheumatologist, Dr. Zamiri." (AR 285.)  In his decision, the ALJ noted Dr. Tan's letter but rejected it as "an ultimate conclusion of permanent disability," which is reserved to the Agency. (AR 31.)  This was a proper basis for rejecting Dr. Tan's opinion. *See Batson*, 359 F.3d at 1195.  Aside from concluding that Plaintiff was disabled, Dr. Tan's letter offered no medical assessment of her condition. (AR 285.)  As such, the ALJ was not bound to discuss it in any greater detail. *See*, *e.g.*, *Batson*, 359 F.3d at 1195 (holding that ALJ may give "minimal evidentiary weight" to treating physicians' opinions that are conclusory, brief, and unsupported by the record).  Furthermore, it is clear that the ALJ accepted the diagnoses noted by Dr. Tan in the letter, in finding that Plaintiff's various medical problems constituted severe impairments. (AR 27.)  Thus, this claim does not warrant reversal or remand.

4.   The Vocational Expert's Testimony

In her fourth claim of error, Plaintiff contends that the ALJ erred in relying on the vocational expert's testimony to find that she could work as a customer service representative, which the vocational expert concluded was sedentary work. (Joint Stip. at 22-24.)  Though

the vocational expert did err here, as explained below, the error was harmless.

The vocational expert concluded that Plaintiff could perform the work of a customer service representative, Dictionary of Occupational Titles ("DOT") No. 959.361-019. (AR 73-74, 84-85.) Plaintiff points out that the DOT describes this work as light work, not sedentary, and argues that she is not capable of performing light work. (Joint Stip. at 23.) The Court agrees. The job of customer service representative, as described by the vocational expert, and as the Agency acknowledges, (Joint Stip. at 24), is light work, requiring a level of exertion that Plaintiff cannot meet. Nevertheless, the vocational expert also testified that a person with Plaintiff's residual functional capacity could work as a "customer or order clerk, or general office clerk," which is classified as sedentary work, and for which 2,000 jobs exist regionally and 20,000 nationally. (AR 85.) Thus, even though the vocational expert erred, the error was harmless because it did not effect the ultimate finding on this issue. *See Stout*, 454 F.3d at 1055 (defining harmless error as one that is inconsequential to the ultimate nondisability determination). The ALJ may, however, want to revisit his step-five analysis on remand after he reconsiders Plaintiff's credibility and the testimony of Plaintiff's son.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IV.  CONCLUSION

    For these reasons, the Agency's decision is reversed and the case is remanded for further proceedings consistent with this memorandum opinion and order.

    IT IS SO ORDERED.

    DATED: March 15, 2010.

_____
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\SOOHOO\Memo_Opinion.wpd

14